IN THE UNITED STATES DISTRICT COURT RECEIVED
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

2021 FEB -9 P 3: 05

CLERK US DISTRICT COURT

**LATASHA HOLLOWAY, in her Capacity as
the MOTHER AND NEXT FRIEND
OF** E C, G H, Q C
**MINORS**

**Plaintiff,**

v.             **CIVIL ACTION NO: 3:19-CV-00039**

**VIRGINIA BEACH PUBLIC
SCHOOL BOARD,**

and

**ALISON WILLIAMS, Individually and in her
Official Capacity as a Teacher, Virginia Beach Public
School Board**

and

**CARI HALL, Individually and in her
Official Capacity as Principal, Virginia Beach Public
School Board,**

**Defendants.**

### AMENDED COMPLAINT

COMES NOW, Latasha Holloway, in her capacity as the mother and next friend

of her biological children, E C, G H, Q C,

MINORS.

A. Parties

1) Plaintiff is the parent of minor children, E⎵ C⎵ and Q⎵ C⎵ who at all times relevant herein were students in a public day school, Rosemont Elementary School operated by the Virginia Beach School Board.

2) Defendant Virginia Beach School Board, herein after referred to as ("The Board") is in accordance with the Constitution of Virginia, Article 8, Section 7, is responsible for the supervision of all public schools in the city and its eleven members are elected in accordance with the Charter of the City of Virginia Beach.

3) Defendant Alison Williams was at all times relevant herein a teacher at Rosemont Elementary School operated by the Board.

4) Defendant Cari Hall, was at all times relevant herein the Principal at Rosemont Elementary School operated by the Virginia Beach School Board.

5) As set forth above, defendants Williams and Hall are being sued in their individual and official capacities as a teacher and as a principal at Rosemont Elementary School operated by the Board.

## B. JURISDICTION

6) Jurisdiction of this Court is invoked pursuant to the Equal Protection and Due Process Clauses of the 14th Amendment; 28 U.S.C. § 1331 which gives this Court subject matter jurisdiction because of federal questions, 2201 and 2202 allow this Court to enter a declaratory judgment against the defendants; and 42 U.S.C. §1983 and 1988; and the Constitution of the Commonwealth of Virginia.

7) Pendent jurisdiction is also requested to allow this Court to litigate the state law claims of assault and battery and intentional emotional distress.

## C. VENUE

8) Pursuant to Local Rule 3(B)(4), this Court has venue over the acts alleged herein because the acts asserted in this Amended Complaint that constitute the violations set forth above, occurred within the geographical boundaries of the Norfolk Division of the United States District Court for the Eastern District of Virginia.

### D. BACKGROUND FACTS

#### 1. E C

E was born on August 9, 2010 and Virginia Beach City Schools (VBCS) recognized that E was suffering from ADHD as evidenced in an IEP on E dated May 2, 2017 which set forth the following observations and conduct of E:

> [F]idgeting in his seat (lifting the legs of the chair off the floor) and demonstrated impulsive behavior (calling out or answering before item was read). Additionally, it appeared that struggled with completing the independent work (writing) and after some time, he shut down (put his head down, cried, threw pencil, and said that he didn't know how to do it). With regard to the rating scales, both the teacher and parent endorsed elevated or clinically levels of concern in the areas of Hyperactivity/Impulsivity, Inattention, Learning Problems, and Executive Functioning. Behavioral observations and rating scale data furnished by teacher and parent indicate that displays significant attention problems in the school and home environments. Exhibit 1

9) This behavior is consistent with E 's September 2016 diagnosis prepared by Children's Hospital of Kings Daughters finding that he suffered from Attention Deficit Hyperactivity Disorder (ADHD). The hospital did not prescribe medication to treat E and he was not taking any medication when he attended VBCS.

10) Under the SOCIAL/EMOTIONAL findings of the IEP it was stated, ": E demonstrates difficulty handling frustration within the classroom. He has been observed to elope from the classroom on 3 occasions, and kick or push objects within the classroom. This behavior hinders E s ability to react appropriately in times of frustration." Exhibit 2

11) On or about March 24, 2018, Anneli S. Barrios, Ph.D., a Pediatric Neuropsychologist prepared a Pediatric Neuropsychological Evaluation Report after seeing E on March 10 and , 15, 2018. Exhibit 3

12) In her report, the psychologist wrote that the plaintiff's utmost concern about F E was:

> F E often blames himself and gives up on trying to do his assignments secondary to and after experiencing abusive and traumatic events in school. More specifically, mother reported that during E s first grade year, he was being dragged out of classrooms and placed into a seclusion room by school staff, in addition to school staff using physical restraints on him. Mother reported that since experiencing the traumatic events at school, E is now very broken and is often defeated, before he even begins. E will withdraw, hide and cower under desks. He is very fearful and experiences very bad nightmares. Mother additionally indicated that E began bedwetting on a nightly basis and has to wear pull-ups, since experiencing the traumatic events. He also experiences wetting accidents during the day. He currently has moments that he is so sad and other moments that he is afraid and crying, since experiencing the traumatic events, per mother's report.

13) The psychologist also reported when talking to E that he:

> reported lots of times feeling "sad and wanting to cry." Throughout this evaluation, I also frequently spoke of being "dragged by teachers in school" and "being put in a dark room," which made him feel very afraid, per self-report. He reported being afraid to attend school at this time and feeling worried that he might be "attacked by the teacher again." During an interview with E when speaking of the traumatic events that he had experienced in school, E crawled underneath the examiner's table to hide in a corner, appearing very frightened. Another projective assessment also had to be discontinued because E began immediately to report that the pictures reminded him of monsters and of the teacher dragging him, making him feel afraid.

14) When E'S mother talked with the psychologist, the psychologist reported:

> refers to himself as the bad boy. He says that his teachers would call him that and lock him in a room all day. E displays significant bouts of tearfulness and sadness during every day activities. He says that he is scared of going back to school and that

he does not want to think about it anymore but he continues to report the scary thoughts that make him sad, per mother's report. Mother also indicated that E displays excessive weeping and he cries or feels like crying frequently (several times a week). His bouts of sadness are often accompanied by tearfulness, per mother's report.
Overall, E displays social withdrawal, sleep disturbance, a disturbance in his appetite, irritability, excessive guilt, low self-esteem, depressed feelings, and excessive weeping, per mother's report. He has never, however, made any statements of wanting to harm himself, per mother's report.

15) Based on E responses, the psychologist opined:

> E s ratings indicated that he is experiencing moderate trauma-related distress. More specifically, I E is displaying Re-Experiencing Symptoms as he endorsed items indicating that he him and almost always experiences upsetting thoughts or pictures about what happened that pop into his head, he almost always feels very upset when he is reminded of what happened, in addition to "half the time," feeling as if what happened is happening all over again, and experiencing bad dreams reminding him of what happened. E responses also indicated that he is experiencing significant Avoidance symptoms as he indicated almost always trying not to think about or talk-about what happened and almost always staying away from people, and places that remind him of what happened. E stated, "I am very afraid of going to school, I am afraid of my teachers hurting me again. His responses also indicated that he is experiencing Negative Cognitions as he endorsed items indicating
> that he almost always experiences negative thoughts about himself or others, in addition to almost always blaming himself for what happened, experiencing bad feelings (anger, guilt), almost always not wanting to do things he used to, and almost always not being able to have good or happy feelings. I E also endorsed a significant amount of Arousal symptoms as he endorsed items indicating that he almost always feels mad and "half the time," feels jumpy, has problems paying attention, and trouble falling/ staying asleep, in addition to being on guard/ checking to see who is around him. Based on E's ratings, the aforementioned difficulties are also causing him functional impairments as indicated that his symptoms are markedly interfere with the following areas of his life: getting along with others, his hobbies/ fun, school, and his general happiness. Qualitatively, when answering the question about whether or not he has been attacked and/ or hurt badly, E stated, "yes I've been attacked. The teacher

in my school attacked me and dragged me on purpose. I was really hurt, they really hurt me. And it made me very very .scared." He reported feeling as scared as he has ever been during those moments, including fearing for his life as he stated that "this is the scariest thing that ever happened to me. I've never been this scared in my life." He also stated, "being dragged by my teacher really bothers me all the time, even right now when I am talking about it. I thought I was gonna die. I thought they were gonna kill me and I was gonna die," after which E proceeded to crawl under the examiner's table to hide in a corner underneath the table, appearing very frightened when recounting these incidences to this examiner. E denied experiencing any other traumatic events in his lifetime.

16) In her summary, the psychologist stated among other things:

> Also of concern at this time, is E trauma symptomatology that he began to exhibit after experiencing traumatic events in school during his first grade year. More specifically, mother reported that E school began reporting to his mother that E would run from his class during his first grade year of school. When mother asked school officials what is E running from, nobody answered her. It was not until June 13, 2017 that E told his mother, "Oh I hope I don't have to go into the locked room because they leave me there for a very very very long long time." E's siblings, who attended the same school, confirmed that there really is a locked room in school, after which mother requested to meet with the principle of the school. Mother reported to the principle what had told her about being placed in a locked room for lengthy periods of time. The principle indicated that they call it the "quiet room," although she did not show the room to E's mother. The following day, E's mother held an emergency IEP meeting. During that meeting, the principle of the school admitted that she had been using restraints and seclusions on a regular basis with E per mother's report. However, the principle reported that she had not kept notes about the duration of seclusions or how many times seclusions and physical restraints were used. Mother reported that E had been put in physical restraints at school, during the school day. The principle had reported that she just did not want E to get into further trouble and that is why those means were used, instead of notifying E mother, per mother's report. Mother reported that the principle had directed other staff to treat E this way on a regular basis (using seclusions and physical restraints). The principle reported that the person restraining him was an aide and that they had dealt with the individual in question, per mother's report. Mother also indicated that the principle apologized for not notifying her and indicated that she recognizes

>that each time these tactics were used, ⁻ E's mother should have been notified, per mother's report. She indicated that the amount and length of time that seclusions or restraints were used could be retrieved from videos, after which mother requested to view the videos. After viewing the video, mother immediately got in touch with the city compliance officer for the school and reported what had happened. Mother reported that the video displayed 2 separate days during which it showed E being removed from the class, what they did with him in the hallway, him being taken into the seclusion room, him being put in a physical hold and carried out. However, the video never showed E going back to class. Mother reported that E had told the police that they left him in the locked room all day, then placing him from there onto the school bus to go home. Mother reported that the video showed the principle engaging in these actions. These videos were viewed during the last week of school, after which summer started, per mother's report.

The psychologist reached the following diagnoses: Posttraumatic Stress Disorder (F43.10); Autism Spectrum Disorder (F84.0) - requiring substantial support (Level 2). Attention-Deficit/ Hyperactivity Disorder - Combined Presentation - Moderate (F90.2). Enuresis (Nocturnal and Diurnal (F98.0) - It is important to note that mother reported that prior to experiencing the traumatic events, E did not experience any toileting accidents. Thus, it is highly probable that the traumatic events E experienced in school during his first-grade year have, to a large extent, contributed directly to E beginning to exhibit symptoms of Enuresis after he experienced the trauma.); and Unspecified Depressive Disorder (F32.9) - It is important to note that E did not display depressive symptomatology prior to the traumatic events that he experienced, per mother's report. It is thus highly likely that E depressive symptoms are directly related to and secondary to his trauma symptoms and the traumatic events he experienced in school during his first-grade year.

17) The plaintiff obtained a videotape which shows the defendants assaulting and battering when he had difficulties in controlling his behavior and she lives determined that the defendants regularly manhandled E in the way seen in the videotape. Exhibit 4

18) The defendants also on frequent occasions forced E into a small room which the defendants referred to as the "quiet room" for hours on end during which time E had no outside stimulation which created the emotional responses that the neuropsychologist found was so disturbing in her report set forth above and in fact produced posttraumatic stress, for which he continues to suffer.

## 2. Chapman

19) Q was born on September 22, 2011 and at all times relevant herein, she was a Virginia Beach Public School student with a history of developmental delays and a host of other medical issues due to her premature birth. Exhibit 5

20) Q was diagnosed with Autism Spectrum Disorder and ADHD.

21) Her impairments substantially impaired her ability to communicate effectively; develop social skills; build relationships; concentrate; complete tasks; and regulate her mood.

22) Q is slow to warm up, she exhibits selective mutism and she has great difficulty transitioning.

23) Q's disabilities impair her ability to verbalize her wants and needs. She is often in a state of sorrow, distress, and tearful. Q most often expresses her impairments with sulking and seeks reassurance throughout every task.

24) The defendants used physical restraints and seclusion as a routine method to discipline Q for various actions which they perceived were negative or problematic which resulted in her being punished because of conduct growing out of her disabilities.

25) In order to hide or conceal their mistreatment of Q the defendants failed or refused to prepare incident reports to document the occasions when they isolated, secluded, restrained, and assaulted her.

26) It was protocol to prepare incident reports on each occasion that a student was disciplined. The reports were to include the date, time, the specifics of the incident.

27) Incident reports are required to be given to the parent or guardian of the child involved.

28) The failure and refusal of the defendants to notify the plaintiff when they secluded, restrained and isolated Q deprived the plaintiff of her ability to protect and advocate for the unique needs of her daughter.

29) The defendants' use of isolation, seclusion, restraints and assaults were an inappropriate intervention and violated the constitutional rights of Q who was often unlawfully imprisoned during her isolation.

30) These tactics escalated in nature and caused great harm to Q

### 3. G H

31) G is a Virginia Beach Public School student who has a history of focal seizures and a host of mental impairments.

32) G is a disabled student diagnosed with severe depression, anxiety, spectrum disorder, and mood disorder to name a few.

33) These impairments have substantially impaired her ability to communicate effectively, develop social skills, emotional instability, concentrate, and sleep.

34) Defendants were notified of G struggles as early as 2014-2015 school year.

35) G is slow to warm up and has great difficulty transitioning in any aspect. G disabilities impair her ability to verbalize or recognize her emotional state. G most often expresses her impairments with emotional meltdowns.

36) G has been denied FAPE due to defendants failure to respond.

37) As a result of G not receiving the educational services, aids and accommodations she needed to meet her unique needs; G was forced out of school and into the more restrictive setting of homebound services.

38) Defendants refusal to provided accommodations severely limited opportunities for ¨ ˙ Ġ ¨ that are afforded to other students.

39) G was denied timely identification, evaluation and application of disability services.

## COUNT 1

### (Denial of Due Process and Equal Protection)

**Offended Plaintiffs 5th Amendment and 14th Amendment rights** Section 1 of the Fifth Amendment states as follows:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property,

without due process of law; nor shall private property be taken for public use, without just compensation"

Section 1 of the Fourteenth Amendment states as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

40) Plaintiff restates and realleges the previous paragraphs set forth above and incorporates them by reference herein which she alleges against the defendants.

41) At all times herein, the defendants were acting under color of state law.

42) The plaintiff was never parents should be informed regarding the possible use of seclusion and restraints before they were used on her children      and

43) The facts as alleged in here indicate multiple seclusions for the minor children of the plaintiff in this case. The plaintiff consistently asked for her children to have A Functional Behavioral Assessment which was routinely denied and there was not in place and effective Behavior Intervention Plan for either of the children and without the use of other interventions the repeated use of restraints and seclusion for plaintiff' children established capricious and arbitrary conduct and which you solely for punishment without any guidelines or consultations with the parent. The defendants used seclusion and restraints as a method to change the behavior of the plaintiff's children and as such, violated their constitutional right to due process.

44) Also, plaintiff has a reasonable belief that seclusion restraints were more often used on children with disabilities as opposed to children without disabilities which denied equal protection.

45) Moreover, there is no evidence that either child was either an imminent danger to himself or herself or to others and therefore, the use of seclusion and restraints in their cases was a denial of due process and equal protection and was also capricious and arbitrary.

46) As alleged herein, the use of seclusion restraints because significant emotional injury to both of the children.

47) Before disciplining the children, the defendants did not make a determination of whether their conduct was a manifestation of their disabilities and failing to do so, it is clear that they were punished because of the disability which is a violation of due process and equal protection

## COUNT 2

**(Defendants acts resulted in Infliction of Emotional Distress, harm and hurt)**

48) Plaintiff restates and realleges the previous paragraphs set forth above and incorporates them by reference herein which she alleges against the defendants.

49) The defendants repeated use of seclusion and restraints was such that they knew or should have known that the children would suffer emotional stress which they did as evidenced by the psychologist reports.

50) The repeated use of seclusion and restraints was outrageous and intolerable because this conduct offends against the generally accepted standards of decency and morality especially when it was inflicted on 2 children with known disabilities.

51) As can be seen by the psychologist reports, these children were repeatedly traumatized by the use of restraints and seclusion and is clear from the children's description to the psychologist that their emotional distress was causally connected to the seclusion and restraints.

52) Once again, the psychologist reports indicate that for both children the emotional distress was severe.

53) Defendants knew or should have known after at least the 2nd or 3rd use of restraints and seclusion that it was having no impact on the children in terms of curtailing the conduct that because the seclusion and restraints and therefore they knew or should have known that there was no value in inflicting this kind of punishment on the children because it did not alter or change their behavior. In fact, all he did was to further traumatized them.

## Count 3

### (Assault and Battery)

54) Plaintiff restates and realleges the previous paragraphs set forth above and incorporates them by reference herein which she alleges against the defendants and that § 18.2-57 of the Virginia Code is unconstitutional as written and/or as applied.

55) In placing the children in restraint as alleged herein, the defendants used force and violence against them because they acted towards the children in a threatening or insulting manner with the present ability to inflict actual violence on the children and unlawfully touched the children against their will and inflicted bodily and emotional harm to the children.

56) Because the defendants were employees of the defendant Board, their actions were done under the color of law.

## Count 4

### (Neglect)

57) § 18.2-371.1 of the Virginia Code states that:

Any parent, guardian, or other person responsible for the care of a child under the age of 18 who by willful act or willful omission or refusal to provide any necessary care for the child's health causes or permits serious injury to the life or health of such child is guilty of a Class 4 felony. For purposes of this subsection, "serious injury" includes but is not limited to (i) disfigurement, (ii) a fracture, (iii) a severe burn or laceration, (iv) mutilation, (v) maiming, (vi) forced ingestion of dangerous substances, and (vii) life-threatening internal injuries.

58) While in school, Chapman was under the care of his teachers, one of them Alison Williams. The manner in which Alison dragged    on the floor exposed him to fractures and life-threatening internal injuries. The lack thereof of proper restraining techniques for children exposes them to serious injuries.

### Failure to Report

59) § 63.2-1509A of the Virginia Code provides that:

The following persons who, in their professional or official capacity, have reason to suspect that a child is an abused or neglected child, shall report the matter immediately to the local department of the county or city wherein the child resides or wherein the abuse or neglect is believed to have occurred or to the Department's toll-free child abuse and neglect hotline:

5. Any teacher or other person employed in a public or private school, kindergarten, or child day program, as that term is defined in § 22.1-289.02;

Defendant Cari Hall is the Principal at Rosemont Elementary School operated by the Virginia Beach School Board. Cari did not report the abuse and neglect propagated towards    Chapman and    Chapman.

### Unconstitutionality of § 18.2-57 of the Virginia Code

60) Section 1 of the Fourteenth Amendment states as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

61) § 18.2-57A of the Virginia Code states as follows:

"Any person who commits a simple assault or assault and battery is guilty of a Class 1 misdemeanor, and if the person intentionally selects the person against whom a simple assault is committed because of his race, religious conviction, gender, disability, gender identity, sexual orientation, color, or national origin, the penalty upon conviction shall include a term of confinement of at least six months."

62) § 18.2-57G of the Virginia Code further states that:

"Simple assault" or "assault and battery" shall not be construed to include the use of, by any school security officer or full-time or part-time employee of any public or private elementary or secondary school while acting in the course and scope of his official capacity, any of the following: (i) incidental, minor or reasonable physical contact or other actions designed to maintain order and control; (ii) reasonable and necessary force to quell a disturbance or remove a student from the scene of a disturbance that threatens physical injury to persons or damage to property; (iii) reasonable and necessary force to prevent a student from inflicting physical harm on himself; (iv) reasonable and necessary force for self-defense or the defense of others; or (v) reasonable and necessary force to obtain possession of weapons or other dangerous objects or controlled substances or associated paraphernalia that are upon the person of the student or within his control.

63) § 18.2-57G of the Virginia Code denies protection to children who may be victims of assault, even in instances where assault can be proven beyond reasonable doubt. It is an exception to § 18.2-57A of the Virginia Code. § 18.2-57G of the Virginia Code denies children the right to sue for assault and battery, even when the actions of a school security officer or full-time or part-time employee of any public or private elementary or secondary school amount to assault. For instance, the Plaintiff's son, Chapman, was assaulted by two of the Defendants. The assault caused him psychological turmoil, including post-stress traumatic disorder. § 18.2-57G of the Virginia Code denies the Plaintiff the right to take action against Alison Williams who assaulted her son. The provision means that children who get assaulted by school employees are not protected under the Virginia Code. That is a violation of the Fourteenth Amendment which provides for equal protection.

**Continuing Wrongs**

In furtherance of retaliatory actions against plaintiff's, defendants engaged in abuse of power or exceeding authority, violations of HIPPA and privacy.

Defendants conspired to further harm children by contacting plaintiffs housing department for the purpose of causing housing hardship.

Plaintiffs were further harmed and endangered by the retaliatory acts of the Defendants.

Defendants continue to exclude guardian of plaintiff from the full participation of decision making for the juvenile plaintiff's and omit FOIA requested data in the possession of the defendants.

To date, all three of the juvenile plaintiff's continues to be denied sufficient accommodations, special education, and services that would allow them to access their curriculum which was a denial of FAPE.

It appears that the Defendants hid evidence of harm and neglect of the Plaintiffs, violation of 14 and 5th amendment.

Section 1 of the Fifth Amendment states as follows:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation"

Section 1 of the Fourteenth Amendment states as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

    **WHEREFORE**, the plaintiff asks that this Court to enter judgment in her favor against the defendants, jointly and severally, as follows:

a. Declare that § 18.2-57 of the Virginia Code is unconstitutional as written and/or as applied.

b. Declare that the defendant's acting jointly and severally, violated the civil rights of the children by denying them due process and equal protection as alleged in the Amended Complaint.

c. Award each child jointly and severally against the defendants, compensatory damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00) for the pain and suffering, humiliation, embarrassment, and inconvenience resulting from the conduct set forth herein.

d. Award punitive damages jointly and severally against the defendants in the amount of THREE HUNDRED AND FIFTY THOUSAND DOLLARS ($350,000);

e. Pre- and post-judgment interest;

f. The taxable costs and attorney's fees incurred; and.

g. Such other and further relief as is proper.

Respectfully submitted,

LATASHA HOLLOWAY, in her Capacity as the MOTHER AND NEXT FRIEND OF CHAPMAN, CHAPMAN, MINORS

**TRIAL BY JURY IS DEMANDED**