IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)

LATASHA HOLLOWAY,
in her Capacity as the Mother and
Next Friend of E.C., Q.C., Minors,

    Plaintiff,

v.                                            ACTION NO. 2:19cv104-AWA-RJK
                                                DEMAND FOR JURY TRIAL

VIRGINIA BEACH PUBLIC SCHOOL
BOARD, *et al.*,

    Defendants.

## THIRD-AMENDED COMPLAINT

For decades, educators have known that the inappropriate use of seclusion and restraint is harmful to children and disproportionately affects children of color and those with special needs.[1] The present action involves children falling into both those categories who suffered as a result of Virginia Beach School Board's lack of policies, procedures, and training regarding the use of seclusion and restraint, and the intentional, grossly negligent, and unconstitutional acts of the very educators tasked with protecting them. Plaintiff Latasha Holloway, in her Capacity as the Mother and Next Friend of E.C. and Q.C., Minors, by counsel, respectfully alleges as follows:

## OVERVIEW

1.      Contrary to widely accepted practice and in violation of their constitutional rights under the Fourth and Fourteenth Amendments, E.C. and Q.C. were confined and isolated in a

---

[1] *See, e.g.*, "Data Reveal Disparities in Schools' Use of Restraints." Education Week. March 13, 2012. (available at https://www.edweek.org/teaching-learning/data-reveal-disparities-in-schools-use-of-restraints/2012/03) (last accessed 4/23/2021).

small, closet-like seclusion room for extended periods of time while they were students at Rosemont Elementary School in Virginia Beach, Virginia.

2. In addition to being put in seclusion, E.C. was also subject to physical restraint solely for the convenience of teaching staff, or for malicious purposes, and certainly without any pedagogical purpose.

3. As a result of these unconstitutional and unlawful practices, E.C. and Q.C. both suffered severe mental and physical harm.

## PARTIES

4. Plaintiff is the mother of minor children E.C. and Q.C., who at all relevant times were students at Rosemont Elementary School in the City of Virginia Beach, Virginia.

5. Defendant Virginia Beach School Board ("VBSB") is in accordance with the Constitution of Virginia, Article 8, Section 7, responsible for the supervision of all public schools in the City of Virginia Beach.

6. Defendant Alison Williams ("Ms. Williams") was at all times relevant herein a teacher at Rosemont Elementary School operated by VBSB.

7. Defendant Cari Hall ("Principal Hall") was at all times relevant herein the Principal at Rosemont Elementary School operated by VBSB.

8. Unknown Defendant ("John Doe") was at all times relevant herein an employee of VBSB at Rosemont Elementary School operated by VBSB.

9. Principal Hall and Ms. Williams are being sued in their individual and official capacities as a teacher and as a principal at Rosemont Elementary School operated by VBSB.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

11. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, or omissions giving rise to Plaintiff's claims have occurred in Virginia Beach, Virginia.

12. Plaintiff seeks systemic relief, as well as damages, under Section 1983 and the U.S. Constitution, and such relief cannot be provided using the administrative procedures authorized by the Individuals with Disabilities Education Act ("IDEA"). Plaintiff does not seek relief herein related to any failure to provide them with a free appropriate public education ("FAPE"). Therefore, any effort to exhaust claims through the administrative process is unnecessary and/or futile, and the Virginia State Department of Education, Division of Special Education Services, Office of Dispute Resolution and Administrative Services responsible for hearing Section 504 matters lacks jurisdiction to correct and hear these wrongs and cannot award appropriate relief, including monetary damages.

## BACKGROUND FACTS

**Educational Landscape Regarding School Restraint and Seclusion Policies**

13. For decades educators have known that the use of restraint and seclusion does not keep students and teachers safe and, by contrast, it puts them in harm's way and should only be used in the most extreme circumstances when the health and safety of individuals is threatened and following appropriate policies and procedures.

14. The U.S. Department of Education has said that public schools need detailed policies to prevent the over and improper use of restraint and seclusion rooms in schools, especially against children of color, children with disabilities, and in any other instances where the use of force or seclusion is not appropriate.

15. More than a decade ago, in 2009, the then Secretary of Education, Arne Duncan, sent a letter to chief school officers across the country about the troubling use of restraint and seclusion in schools and asked each state to review its policies regarding the use of restraint and seclusion in schools to ensure the safety of children.

16. If they were not already on notice of the problem before, this 2009 letter put any reasonable educator on notice that the failure to adopt adequate policies regarding restraint and seclusion of children, certainly minority and special needs students, would result in the misuse of restraints and seclusion and that the need to adopt a policy and train educators was plainly obvious.

17. In 2012, the U.S. Department of Education developed its "Restraint and Seclusion: Resource Document," which describes fifteen principles for states, school districts, and other stakeholders to consider when developing seclusion and restraint policies (hereinafter referred to as the "DOE Guidelines").

18. The DOE Guidelines stress that "[s]chool should be a safe and healthy environment in which America's children can learn, develop, and participate in instructional programs that promote high levels of academic achievement."

19. Regarding the use of restraint and seclusion, the DOE Guidelines state that "[r]estraint or seclusion should not be used as routine school safety measures; that is, they should not be implemented except in situations where a child's behavior poses imminent danger of serious physical harm to self or others and not as a routine strategy implemented to address instructional problems or inappropriate behavior (e.g., disrespect, noncompliance, insubordination, out of seat), as a means of coercion or retaliation, or as a convenience."

20. If they were not already on notice of problem before, these DOE guidelines put any reasonable educator on notice that the failure to adopt adequate policies regarding restraint and seclusion of children, certainly minority and special needs students, would result in misuse of restraints and seclusion and that the need to adopt a policy and train educators was plainly obvious.

21. In the Commonwealth of Virginia, various organizations and governmental agencies have discussed the need for detailed policies regarding the use of restraint and seclusion in schools for years.

22. In September 2009, the Virginia Department of Education's Office of Special Education and Student Services revised its "Guidelines for the Development of Policies and Procedures for Managing Student Behaviors In Emergency Situations In Virginia Public Schools: Focusing on Physical Restraint and Seclusion" ("VDOE Guidelines").

23. VDOE encouraged school divisions to adopt its guidelines or develop policies regarding physical restraints and seclusion.

24. If they were not already on notice of problem before, these VDOE guidelines put any reasonable educator on notice that the failure to adopt adequate policies regarding restraint and seclusion of children, certainly minority and special needs students, would result in misuse of restraints and seclusion and that the need to adopt a policy and train educators was plainly obvious.

25. In August 2010, the Virginia State Boards Association ("VSBA"), a voluntary and nonpartisan organization of school boards, adopted a policy regarding restraints and seclusion called "Restraint and Seclusion of Students" (hereinafter the "VSBA Guidelines").

26. If they were not already on notice of problem before, these VSBA guidelines put any reasonable educator on notice that the failure to adopt adequate policies regarding restraint and seclusion of children, certainly minority and special needs students, would result in misuse of restraints and seclusion and that the need to adopt a policy and train educators was plainly obvious.

27. By 2014, the vast majority school districts in the Commonwealth adopted the VDOE Guidelines, the VSBA Guidelines, or adopted their own restraint and seclusion policies.

28. In 2015, the Virginia legislature passed a law directing the Virginia Board of Education to adopt regulations governing the use of seclusion and restraint.

29. If they were not already on notice of problem before, this 2015 statute put any reasonable educator on notice that the failure to adopt adequate policies regarding restraint and seclusion of children, certainly minority and special needs students, would result in misuse of restraints and seclusion and that the need to adopt a policy and train educators was plainly obvious.

30. During the 2016-2017 academic year, there were ample resources providing examples and guidelines of seclusion and restraint policies for school systems to model and the failure to have such policies, given the risk of abuse of restraints and seclusion, particularly on minority and special education students, was outrageous, shocks the conscience, and was plainly incompetent.

**Inaction by Virginia Beach Public Schools to Implement Restraint and Seclusion Policies**

31. Prior to and during the 2016-2017 academic year, VBSB had no policy in place regarding the use of restraint and seclusion against its students.

6

32. Prior to and during the 2016-2017 academic year, VBSB did not provide or require training to teachers and other educators regarding the use of restraint and seclusion against students.

33. Prior to and during the 2016-2017 academic year, VBSB did not have a system for maintaining appropriate documentation concerning use of restraint and seclusion against students in the Virginia Beach Public Schools.

34. Prior to and during the 2016-2017 academic year, Rosemont Elementary School had no written policy in place regarding the use of restraint and seclusion against its students.

35. Prior to and during the 2016-2017 academic year, Rosemont Elementary School did not have a system for maintaining appropriate documentation concerning use of restraint and seclusion.

36. Despite the ample resources and knowledge in the educational community regarding the need for restraint and seclusion policies and knowledge of the use of restraint and seclusion in the Virginia Beach Public School System, the Virginia Beach Public School Board did not adopt a restraint and seclusion policy until late 2020.

37. Despite the ample resources and knowledge in the educational community regarding the need for restraint and seclusion policies and the school's own practice of using seclusion and restraint, Rosemont Elementary School did not have its own restraint and seclusion policy prior to the adoption of the VBSB's policy in late 2020.

38. Despite the lack of a policy, educators throughout the Virginia Beach Public School System regularly used physical restraints and seclusion rooms before and during the 2016-2017 academic year. Some schools, like Rosemont Elementary School even had designated spaces used specifically for seclusion.

39. Despite the use of physical restraints and seclusion within the school system, the Virginia Beach Public School System repeatedly and falsely reported to the Department of Education's Civil Rights Data Collection service that that no such use occurred—preventing parents, citizens, activists, and others from advocating for change or inquiring into whether their child was subject to such treatment.

**Mistreatment of E.C. and Q.C. at Rosemont Elementary School**

40. During the 2016-2017 academic school year E.C., Q.C., and G.H. were students at Rosemont Elementary School.

41. During the 2016-2017 academic school year, Q.C. was 5 years old.

42. During the 2016-2017 academic school year, E.C. was 6 years old.

43. During the 2016-2017 academic school year, G.H. was 9 years old.

44. During the 2016-2017 academic school year, Rosemont Elementary School and its teachers and staff knew that E.C. had learning difficulties and implemented an Individualized Education Plan on May 2, 2017 to establish a plan that would work with his attention deficit hyperactivity disorder ("ADHD").

45. During the 2016-2017 academic school year, Rosemont Elementary School and its teachers and staff knew that Q.C. had learning difficulties as evident by, among other things, her selective mutism.

46. Plaintiff did not know of any improper treatment of E.C. or Q.C. until after June 6, 2017.

47. On June 6, 2017, E.C. was forcibly removed from his classroom, dragged down the hallway, and physically restrained by Ms. Williams (the "Incident").

48. The conduct by Ms. Williams, was so egregious and "inappropriate" that she received a written reprimanded for physically restraining E.C. in a manner that was "not prudent or professional."

49. Upon learning of the Incident, the Plaintiff sought to file a police report and/or a report with Child Protective Services and was told by both that they would not take her report and she would have to pursue other methods to obtain information and justice for her child. Plaintiff believes, and therefore alleges, that the refusal to take her report is consistent with a pattern and practice of those institutions of ignoring reports concerning mistreatment of school children by Virginia Beach Public School System employees.

50. Upon information and belief, no employee of Rosemont Elementary School filed a complaint with Child Protective Services regarding the treatment of E.C. or Q.C. despite mandatory reporting requirements. Plaintiff believes, and therefore alleges, that the refusal or failure to report the use of restraint and seclusion at Rosemont Elementary School is consistent with a pattern and practice of Virginia Beach Public School System employees at large ignoring and failing to report concerns of mistreatment of school children.

51. After the Incident, G.H. told Plaintiff about her experiences witnessing children at Rosemont Elementary School being placed into seclusion.

52. After the Incident, Plaintiff had multiple conversations and meetings with Principal Hall to discuss the treatment of E.C. and the use of seclusion at Rosemont Elementary School.

53. During their meetings, Principal Hall admitted that E.C. was forced into a small room which was known at Rosemont Elementary School as the "seclusion room" on multiple occasions.

54. During one of their meetings, Principal Hall gave Plaintiff a tour of Rosemont Elementary School's seclusion room, which is a small, locked, windowless room resembling a closet.

55. In one of the conversations with Principal Hall after the Incident, Principal Hall admitted to Plaintiff that, like E.C., Q.C. had previously been put in the seclusion room as well.

56. Based on her conversations with Principal Hall after the Incident, Plaintiff believes, and therefore alleges, that Principal Hall herself used the seclusion room as a place to isolate E.C. and Q.C. at various times during their tenure at Rosemont Elementary School both during the 2016-2017 academic year and before.

57. Based on her conversations with Principal Hall after the Incident, Plaintiff believes, and therefore alleges, that Ms. Williams and Principal Hall used the seclusion room as a place to isolate E.C. at various times during his tenure at Rosemont Elementary School. To the extent that someone other than Ms. Williams or Principal Hall was the individual who placed E.C. into the seclusion room, Plaintiff alleges that John Doe is liable.

58. Prior to these post-Incident meetings with Principal Hall, Plaintiff was not notified of her children being put in the seclusion room nor did she ever approve such treatment.

59. The removal of E.C. and Q.C. from the classroom to place them in seclusion on multiple occasions and for what is believed to be a prolonged period of time was not *de minimus* and was instead done at and for the convenience of the teacher or principal and not for any legitimate purpose.

60. In the alternative, Plaintiff alleges that such seclusion was done sadistically or maliciously, as no reasonable (or unreasonable) educator could believe that such treatment of special needs student served any disciplinary, pedagogical, or legitimate purpose.

61. As a result of the Incident and the other uses of the seclusion room, E.C. and Q.C. suffered significant emotional trauma, that manifested in physical manifestations including nocturnal enuresis.

62. As a result of the Incident and the other uses of the seclusion room, E.C. and Q.C. suffered significant terror, a refusal to attend school, and other emotional manifestations, including fear of the dark, isolation, and other things that reminded them of the seclusion room.

63. Plaintiff withdrew her children—including E.C. and Q.C.—from Virginia Beach Public Schools after the Incident.

64. Plaintiff attempted an investigation into the Incident and any other similar incidents with her children and demanded records, including, but not limited to, all video footage showing any of her children, including E.C. or Q.C., being placed in a seclusion room. Such video footage would have allowed a clear determination of the amount of time E.C. and Q.C. spent in seclusion, the circumstances surrounding their placement in seclusion, and the frequency of their placement in seclusion.

65. The plaintiff obtained video footage from June 6, 2017, which shows a teacher who is believed to be Alison Williams physically restraining E.C. and dragging him down the hallway.

66. Save for abridged footage from the date of the Incident, Plaintiff was told that no further footage of her children was maintained. Prior to this claim, VBSB had stated that further footage was available. Plaintiff believes, and therefore alleges, that such footage was either intentionally or negligently destroyed after she began to request information about the treatment of her children.

67. Given the destruction, failure to maintain records, or failure to keep records in the first instance, combined with statements made by her children and their significant emotional trauma, plaintiff believes and therefore alleges that E.C. and Q.C. were placed in the seclusion room on multiple occasions for prolonged periods of time, including in one instance for the majority of a day.

### Retaliation for Pursuing an Investigation

68. After the Incident and as a direct and proximate result of the inquiries and investigations engaged by Plaintiff into the treatment of her children at Rosemont Elementary School, Plaintiff believes, and therefore alleges, that she experienced retaliation by the VBSB. Specifically, truancy actions were taken against Plaintiff after she withdrew her children from public schools and enrolled them in private school after the Incident. Further, Plaintiff—a recipient of public housing benefits—was also forced to leave her housing after given the ultimatum that she would have to choose between putting her kids back in public school or lose her housing.

69. Plaintiff now seeks court intervention to right the injustices against her children.

### COUNT I - VIOLATIONS OF 42 U.S.C. § 1983 FOR VIOLATIONS OF THE FOURTH and FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION – ALL DEFENDANTS

70. Plaintiff incorporates by reference all preceding paragraphs as if alleged herein.

71. Under 42 U.S.C. § 1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

72. At all relevant times, Defendants were acting under color of law under § 1983 and are directly and proximately responsible for the deprivation of E.C. and Q.C.'s Fourth Amendment and Fourteenth Amendment rights.

73. The Fourth Amendment provides the right to be free from "unreasonable searches and seizures[.]" U.S. Const. amend IV.

74. The Fourteenth Amendment mandates that all persons born in the United States are entitled to due process before restriction of their liberty, and to equal protection of the laws. U.S. Const. amend XIV.

75. At all relevant times, VBSB either knew or were deliberately indifferent to the use of restraint and seclusion in Virginia Beach Public School, including at Rosemont Elementary School.

76. VBSB violated 42 U.S.C. § 1983 by failing to implement policies on restraint and seclusion and by failing to adequately train their staff in the evidence-based and widely-accepted methods regarding to the use of restraint and seclusion, especially to respond to disability-related behaviors.

77. Defendants' actions have violated E.C. and Q.C.'s rights by subjecting them to unnecessary and unlawful seizure without any due process or notice to their parents.

78. Defendants' actions have violated E.C. and Q.C.'s rights by removing them from the classroom without even rudimentary due process of law, including notice to their parents regarding the incidents, and opportunity to characterize their conduct in the proper context, and continuing to deprive them of educational opportunities after they were no longer any threat of disruption to the classroom.

79. Defendants acted intentionally or with reckless indifference to the constitutional rights of E.C. and Q.C.

80. E.C. and Q.C. suffered severe emotional distress and physical harm as a direct and proximate result of the seclusion and restraint used against them.

**COUNT II- Intentional Infliction of Emotional Distress (Individual Defendants Only)**

81. Plaintiff incorporates by reference all preceding paragraphs as if alleged herein.

82. Principal Hall, Ms. Williams, and Doe's respective conduct, including the use of seclusion and restraint, against E.C. and Q.C., was grossly negligent, intentional, and reckless.

83. Principal Hall, Ms. Williams', and Does' respective conduct, including the use of seclusion and restraint, against E.C. and Q.C., was extreme, outrageous, and intolerable.

84. No reasonable educator would think that the use of seclusion against E.C. and Q.C. was appropriate.

85. E.C. and Q.C. suffered severe emotional distress as a direct and proximate result of the seclusion and restraint used against them.

**Count III – Wrongful Imprisonment (Individual Defendants Only)**

86. Plaintiff incorporates by reference all preceding paragraphs as if alleged herein.

87. Principal Hall, Ms. Williams, and Doe's intentionally and physically restricted E.C. and Q.C.'s freedom of movement by placing them in the seclusion room on multiple occasions without legal right.

88. The use of seclusion against E.C. and Q.C. was done solely for the convenience and at the unbridled discretion of Principal Hall, Ms. Williams, and Doe.

89. No reasonable educator would think that the use of seclusion against E.C. and Q.C. was appropriate.

90. Principal Hall, Ms. Williams, and Doe's respective conduct, including the use of seclusion and restraint, against E.C. and Q.C., was grossly negligent, intentional, and reckless.

91. E.C. and Q.C. had no choice but to submit to the restraint and imprisonment imposed upon them by their forced seclusion.

92. E.C. and Q.C. suffered severe emotional distress and physical harm as a direct and proximate result of the seclusion and restraint used against them.

### Count IV – Assault (Defendant Ms. Williams Only)

93. Plaintiff incorporates by reference all preceding paragraphs as if alleged herein.

94. With intent to touch, on June 6, 2017, Ms. Williams physically removed E.C. from the classroom, dragged him across the floor, and physically restrained him.

95. Ms. Williams' conduct on June 6, 2017, including her dragging and physically restraining E.C. was grossly negligent, intentional, and reckless.

96. The aforementioned contact of E.C. by Ms. Williams was offensive.

97. There was no excuse or justification for Ms. Williams' touching of E.C. in the manner in which she did.

98. No reasonable educator would think that the use of restraint was necessary against E.C. on June 6, 2017, under the circumstances.

99. E.C. suffered severe emotional distress and physical harm as a direct and proximate result of the seclusion and restraint used against them.

### JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

### REQUEST FOR RELIEF

Wherefore, Plaintiff prays for judgment against defendants as follows:

Plaintiff seeks, on behalf her minor children, E.C. and Q.C., compensatory damages for extreme mental suffering, emotional distress, physical harm and special damages all of which were directly and proximately caused by Defendants' acts and omissions.

Plaintiff seeks punitive damages under 42 U.S.C. § 1983 for violations of E.C. and Q.C.'s constitutional rights.

Plaintiff seeks her costs and attorneys' fees incurred in prosecuting this matter both under 42 U.S.C. § 1988 and under the wrongful imprisonment count under state law.[2]

Plaintiff prays for such other equitable or legal relief as the Court deems just.

LATASHA HOLLOWAY,
in her Capacity as the Mother and
Next Friend of E.C. and Q.C., Minors

By: */s/ Dustin M. Paul*
         Of Counsel

Dustin M. Paul (VSB #75287)
Jennifer L. Eaton (VSB #87491)
Gaela R. Normile (VSB #95912)
Daniel L. Stephens (VSB #95012)
Vandeventer Black LLP
101 W. Main Street, Ste. 500
500 World Trade Center
Norfolk, VA 23510
757.446.8600-telephone
757.446.8670-fascimile
dpaul@vanblacklaw.com
jeaton@vanblacklaw.com
gnormile@vanblacklaw.com
dstephens@vanblacklaw.com

4853-2169-4950, v. 1

---

[2] Undersigned counsel do so on a *pro bono* basis, but that does not change Plaintiff's entitlement to attorneys' fees if the case is meritorious. *Brinn v. Tidewater Transp. Dist. Comm'n*, 242 F.3d 227, 234 (4th Cir. 2001). The intention of any such fees would be for the public interest.