IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)

LATASHA HOLLOWAY,
in her Capacity as the Mother and
Next Friend of E.C., Q.C., Minors,

    Plaintiff,

v.                                                                     ACTION NO. 2:19cv104-AWA-RJK

VIRGINIA BEACH PUBLIC SCHOOL
BOARD, *et al*.,

    Defendants.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

       Defendants' Motion for Summary Judgment simply does not adhere to the principles of Fed. R. of Civ. P. 56. Rather than take the facts and inferences in favor of Plaintiffs, Defendants claim their version of events are the "undisputed material facts" and then proceed to argue from that starting point. That is misguided and cannot support the entry of summary judgment.

       There are clearly significant disputes of material fact as to what happened to E.C. and Q.C. The Court cannot evaluate the legal basis of the claims without a resolution by the factfinder of what actually happened to the children. Defendants cannot short circuit this litigation by ignoring the contrary testimony and drawing all inferences against Plaintiffs.

       The testimony supports a conclusion that Q.C. and E.C. spent hours in a room, by themselves for no educational reason. Their mother was never informed of this substantial deprivation of their educational opportunities, and they were offered no due process protections from these deprivations. The actions of Defendants satisfy the requirements to establish constitutional violations, intentional infliction of emotional distress, false imprisonment, and

1

assault. As a result of this isolation, Q.C. and E.C. suffered significant emotional trauma and have not been able to return to public school. Their claims must be decided by a factfinder.

When the facts are taken in the light most favorable to E.C. and Q.C., there should be no doubt this case is inappropriate for summary judgment.

## STATEMENT REGARDING DISPUTED MATERIAL FACTS

For purposes of summary judgment only, consistent with Local Rule 56(B), Plaintiffs do not dispute the paragraphs numbered 1, 2, 3, 4, 5, 8, 10, 11, 12, 15, 18, 26, 27, 28, 29, 30, 31, 35, 36, 38, 40, 41, 42, 43, 44, 45, 46, 47, 48, 50, 51, 52, 53, 54, 55, 56, 57.

Paragraph 6 is disputed. As the testimony cited establishes, the room was neither used nor equipped in the manner "developed" by the Board Certified Behavior Analyst, and the room, as used on E.C. and Q.C. was in a manner only of the creation of Ms. Hall. Dkt. 43-4 at 9-12.

Paragraph 7 is disputed. Plaintiffs do not challenge the actual the text of the paragraph but deny the implication that Q.C. or E.C. had any knowledge of how the lever door handle and lock worked. To the contrary, the testimony establishes that the children believed the room was locked. See Dkt 43-5 at 10:6-10.

Paragraph 9 is disputed. Plaintiffs dispute the assertion in Paragraph 9 that "the quiet room also provided a safe space," not only because of the psychological dangers of the room but because placing children in the room where only Ms. Hall could access the room posed a danger in emergency situations, like a fire or child illness. See. Dkt 43-2 at 61:11-19.

Paragraphs 13 and 14 are disputed. Plaintiffs deny E.C. had any "violent tendencies." Ms. Hall herself stated that E.C. did not have a violent bone in his body. Dkt 43-2 at 56:9-12.

Paragraph 16 is disputed. Plaintiffs deny that Williams or Hall were unable to reach Ms. Holloway by telephone or to leave her a voicemail. Dkt. 43-2 at 13:3-16:19. Further, even if the

voicemail was full, Ms. Holloway could have been reached in numerous other ways. *Id.* She was at the school nearly every day and the claim of problems with her voicemail is a pretext of Defendants for their failure to communicate. *Id.*

Paragraph 17 is disputed. Plaintiffs deny E.C. committed any violent acts. Ms. Hall herself stated that E.C. did not have a violent bone in his body. Dkt 43-2 at 56:9-12.

Paragraph 19 is disputed. If the facts are as Plaintiffs allege, even Ms. Williams agrees the quiet room was not being used for "de-escalation." Dkt. 43-3 at 47:5-48:4.

Paragraph 20 is disputed. Hall was not with E.C. when he was secluded in the room. E.C. was alone. Dkt. 43-5 at 9:15-21; 10:15-17.

Paragraph 21 is disputed. Ms. Holloway was never informed about the use of the quiet room or that her son would be excluded from educational opportunities. Dkt. 43-2 at 81:9-15.

Paragraphs 22 and 23 are disputed. There is evidence by which a factfinder could conclude there was an IEP in place. See, *e.g.* the Statement by Rashard J. Wright, Chief Schools Officer for Virginia Beach, claiming that Defendants "were also adhering to [E.C.'s] Individual Education Program (IEP)", attached as Exhibit 1.

Paragraph 24 is disputed. Rather than being placed in only seclusion only five times, E.C. was being placed in the seclusion room nearly every day. Dkt 43-5 at 9:1-4. He was not with Ms. Hall in the room. Dkt. 43-5 at 9:5-8.

Paragraph 25 is disputed. The contention that a request under a specific statute is the only means to obtain records held by the School Board is not supported by Ms. Hall's testimony nor is she in a position to reach that conclusion. The School Board's 30(b)(6) witness was unable to articulate this policy or explain why only two videos were available. The representative specifically testified she was unable to describe the equipment or how it hand changed since

2016-2017. Depo. of School Board's 30(b)(6) witness at Pg.48:8-49:23, attached as Exhibit 2. A factfinder could certainly reject Ms. Hall's self-serving testimony when the School Board's corporate designee has testified the School Board does not know. Indeed, Ms. Hall herself had previously said she had the videos of E.C. being placed in the seclusion room and that she would provide the videos. Dkt 43-2 at 32:19-22.

Paragraphs 32- 34 are disputed. Defendants only offer Ms. Williams' self-serving testimony and no other evidence. The video produced does not support this version of events. See Exhibit A to Defendants' Memorandum. A reasonable factfinder could conclude from the videotape showing E.C.'s actual behavior that this wild tale of "total destruction" "screaming" and "growling" is completely inconsistent with the docile, calm, and playful E.C. depicted in the video and reject Ms. Williams' version as uncredible. Plaintiffs deny this was a "judgment call" and point the Court specifically to the reprimand of Ms. Williams attached as Exhibit 3.

Paragraph 37 is disputed. Q.C. was placed in the seclusion room. Dkt. 43-6 at 8:16-9:6.

Paragraph 39 is disputed to the extent it suggests that everyone agreed Q.C. had improved to that point. *See* Paragraph 40 of Defendants' Undisputed Facts.

Paragraph 49 is disputed to the extent it ignores Ms. Holloway's personal observations of the children, her viewing of the relevant video, her discussions with school staff, and all other information other than personally witnessing her children being placed in the seclusion room.

## ADDITIONAL FACTS SUPPORTED BY THE RECORD

1. Ms. Holloway never gave permission for Q.C. or E.C. to be removed from the classroom and placed in a seclusion room. Dkt. 43-2 at 80:14-23.
2. Ms. Holloway was never given any notice or information that E.C. or Q.C. were being placed into the seclusion room. *Id* at 17:1-8.

3. Defendants claim that E.C. was often kicking children, throwing pencils, and otherwise being a threat to himself and others. Dkt. 43-3 at 21:25-23:1.

4. But despite these claims, Ms. Holloway was never given any notice of the behaviors, like the alleged beating of E.C.'s head against his desk, that Defendants claim were the justification for physically restraining him and placing him in the seclusion room. Dkt 43-2 at 67:22-68:19. Plaintiffs are entitled to an inference that these claims are a pretext created after Defendants' unlawful and tortious conduct was revealed.

5. Ms. Holloway dropped her children off every day at school during the relevant period and had frequent conversations with the school office about her children at which times she could have been informed of any alleged dangerous conduct. *Id.* at 43-2 at 15:18-22.

6. Despite having meetings with Ms. Holloway regarding the development of an IEP at the time the seclusion room was being used, it was never discussed during the IEP meetings. Dkt. 43-3 at 31:10-17.

7. Ms. Holloway provided E.C. and Q.C.'s school multiple emergency contacts so that there was a way to convey information to her even if she was unavailable at a specific time by phone. Dkt. 43-2 at 16:1-19.

8. Both E.C. and Q.C. break down in tears at times when discussing their experiences at Rosemont Elementary. *Id.* at 19:12-20:16.

9. E.C. has extreme emotional and physiological reactions to triggers concerning his experiences at Rosemont Elementary, including urinating on himself at the sight of school busses. *Id.* at 20:23-21:22.

10. Q.C. went from being fully potty trained to wetting herself at night after the use of the seclusion room. *Id.* at 105:21-106:12.

11. E.C. confided in his mother in early June that he was being kept in the locked room for most of the day. *Id.* at 66:4-12.[1]

12. Q.C. tearfully described her placement and abuse in the seclusion room to a doctor near in time to when it occurred. *Id*. at 28:21-29:22.[2]

13. E.C. described his placement and abuse in the seclusion room to a police officer at or near the time to when it occurred. *Id.* at 42:22-43:4; 43:15-44:14.[3]

14. During the time the seclusion room was being used on E.C., while Ms. Holloway was unaware of its use, E.C. would frequently cry, beg not to go to school, and cry at the sight of school busses. *Id.* at 65:22-66:3.

15. Ms. Holloway made both verbal and written requests to obtain the videos of her children being placed in the seclusion room. *Id*. at 32:5-11.

16. After making a verbal request to Ms. Hall, she was promised by Ms. Hall that Ms. Hall would obtain the videos for her. *Id.* at 32:19-22.

17. Ms. Hall and Ms. Williams' admit that they were required to complete "referral" paperwork describing the use of the seclusion room. Dkt. 43-3 at 26:12-27:18; Dkt. 43-4 at 21:14-22:7.

18. Ms. Hall and Ms. Williams admit that paperwork was supposed to be provided contemporaneously to Ms. Holloway. Dkt 43-3 at 30:10-18; Dkt. 43-4 at 21:18-25.

19. That paperwork would have described when and how E.C. and Q.C. spent time in the seclusion room. Dkt. 43-4 at 24:25-25:6.

---

[1] Admissible under Rule 801 as a prior consistent statement to rebut Defendants' claims of fabrication.
[2] Admissible under Rule 801 as a prior consistent statement to rebut Defendants' claims of fabrication or under Rule 803(4) as a statement made for diagnosis or treatment.
[3] Admissible under Rule 801 as a prior consistent statement to rebut Defendants' claims of fabrication.

20. That paperwork, if it ever existed, has never been provided to Ms. Holloway despite repeated requests. Dkt. 43-2 at 32:23-33:11.

21. Ms. Williams was never provided any training about how to use the seclusion room. Dkt. 16:10-14

22. Rosemont Elementary had other locations than the seclusion room for students to take "timeouts" including the special education room where they had beanbags to rest on and would not be in isolation. *Id.* at 18:8-21.

23. That area in the special education room was brightly lit, had toys, and E.C. liked to be there. *Id.* at 19:20-25.

24. Ms. Williams admits that placing a child like E.C. or Q.C. in a seclusion room for more than ten or fifteen minutes would be cruel, inhumane, and would serve no legitimate purpose. Dkt. 43-3 at 46:14-48:4.

25. Ms. Hall admits that there would be no reason to place a child like E.C. or Q.C. in a seclusion room for more than 15 minutes. Dkt. 43-4 at 57:11-58:5.

26. E.C.'s placement in the seclusion room was driven by a concern that he could disrupt state standardized testing. Dkt. 43-3 at 38:24-39:5.

27. Ms. Hall did not take any classes regarding special education students during her undergraduate, masters, or specialist degree programs. Dkt. 43-4 at 6:1-4.

28. Nevertheless, she unilaterally decided the seclusion room could be modified from its original form and used for other students, despite the fact it was designed for use only with one specific student. Dkt 43-4 at 13:5-15:7.

29. Virginia Beach Schools had absolutely no policies about how, when, and why to use seclusion rooms. Dkt. 43-4 at 15:8-10.

30. Virginia Beach had no policies despite the fact that these seclusion rooms existed at multiple schools and the District knew they existed. *Id.* at 15:11-14.

31. Virginia Beach had no policies despite the July 31, 2009, letter of Secretary of Education Arne Duncan encouraging schools to have "policies and guidance in place prior to the start of the 2009-2010 school year to help ensure that no child is subjected to the abusive or potentially deadly use of seclusion or restraint in a school." and attached as Exhibit 4.[4]

32. Virginia Beach had no policies despite publications like "Restraint and Seclusion: Resource Document" published in May 2012 by the Department of Education and attached as Exhibit 5.[5]

33. A factfinder can infer that there was nothing to stop the School District from ending the use of dangerous seclusion rooms before E.C. and Q.C.'s abuse, because the use of seclusion rooms allegedly ended in 2017 after Ms. Holloway's complaint. Dkt. 43-4 at 67:2-7.

34. Ms. Hall claims to have made the decision every time the seclusion room was used. *Id.* at 19:9-15.

35. Ms. Hall claims she would have had a conversation with Ms. Williams every time he was placed in the seclusion room. Dkt. 43-4 at 37:23-38:15.

36. Ms. Williams claims she never discussed the use of the seclusion room with Ms. Hall. Dkt. 43-3 at 17:10-14.

37. Based on the conflicting testimony of Ms. Hall and Ms. Williams regarding the seclusion room and their discussions, a factfinder could reasonably conclude the testimony is false

---

[4] Available at https://www2.ed.gov/policy/elsec/guid/secletter/090731.html and admissible under Rule of Evidence 803(8) as a Public Record.
[5] Available at https://www2.ed.gov/policy/seclusion/restraints-and-seclusion-resources.pdf and admissible under Rule of Evidence 803(8) as a Public Record.

and evidence of a guilt for the conduct alleged. Plaintiffs are entitled to this inference at summary judgment.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 states that a court should only render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If a factfinder could render a verdict for the non-moving party, then a genuine issue of material fact exists. *Id.* When evaluating a motion for summary judgment, a court is to look at the facts in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment should not be granted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"To prove that no genuine factual issues exist, the movant must present a factual scenario without any 'unexplained gaps.'" 11 Moore's Federal Practice 3D, § 56.13[1] (referring to *Adickes v. S.H.Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). "The plaintiff is entitled to have the credibility of all his evidence presumed." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The credibility of a witness at a deposition is a question for the factfinder rather than an issue to be settled at the summary judgment stage. *Id.* at 804.

## ARGUMENT

There are basic and fundamental facts in dispute about what happened to E.C. and Q.C. Testimony supports the conclusion that they were placed in seclusion for significant periods of time and that E.C. was dragged from his classroom, by his arm, without concern for his safety.

If the jury believes the testimony of E.C. and Q.C., they have met all of the elements of the claims asserted in this case. And the testimony of E.C. and Q.C. is further bolstered by Ms. Holloway's testimony of their contemporaneous reports and the emotional trauma and reactions of E.C. and Q.C. This court cannot grant summary judgment to Defendants on this record without making findings of fact and rejecting the well-known Rule 56 standards.

1. <u>Summary Judgment Cannot be Granted with Regard to Count I—violations of the Fourth and Fourteenth Amendment.</u>

    A. <u>Williams and Hall unreasonably and unlawfully seized E.C. and Q.C.</u>

The 4th Amendment right to be free from unreasonable searches and seizures applies to acts carried out by school officials on students. *DesRoches v. Caprio*, 156 F.3d 571, 574 (4th Cir. 1998). In the school context, a seizure is "permissible in its scope when the measures adopted are reasonably related to the objectives of the [seizure] and not excessive[] . . . in light of the age and sex of the student and the nature of the infraction." *New Jersey v. T.L.O.*, 469 U.S. 325, 342 (1985). Multiple Fourth Circuit district courts have held that a student's Fourth Amendment rights are violated due to excessive force and seizure of a child by school officials. *P.A. v. Fayette Cty. Bd. of Educ.*, 2020 U.S. Dist. LEXIS 146887 (S.D. W. Va. Aug. 14, 2020) (holding that a school therapist violated a 4-year-old's rights by using excessive force); *Z.F. v. Adkins*, 2019 U.S. Dist. LEXIS 61681, *7-8 (W.D. Va. April 10, 2019) (holding that a school security officer used excessive force against 14-year-old by tackling him in a hall with no clear justification). Furthermore, other district courts have found a Fourth Amendment violation when a child is placed in seclusion. *See e.g. Rasmus v. Arizona*, 939 F. Supp. 709, 716 (D. Ariz. 1996) (holding that placing a child with a disability in a locked windowless seclusion room without parental consent was an unreasonable seizure).

Defendants argue that placing E.C. and Q.C. in "timeout" was lawful and was not an unlawful seizure. Dkt. 43 at 14. Defendants only argue, however, there was no unlawful seizure with regard to Ms. Hall's and Ms. Williams' removal of E.C. from the classroom. They make no argument that the placement and retention of E.C. and Q.C. in the seclusion room for long periods was not an unreasonable seizure.

Defendants did not make that argument because they could support it. As Defendants admit, seizure is the "governmental termination of freedom of movement through means intentionally applied." Dkt 43 at 14. School officials placing minor children in a room, by themselves without any furniture or educational materials, not allowing them to leave, and letting them believe they are locked in that room is undoubtedly a seizure.

And there can be little doubt that a factfinder could conclude that keeping E.C. and Q.C. in such a seclusion room for more than 15 minutes is unreasonable. Both Defendant Williams and Defendant Hall <u>admit</u> it would be unreasonable. Ms. Williams testified that any educator would know not to put a child in a seclusion room for more than ten minutes. Dkt. 43-3 at 47:5-14. She explained that to keep a child in such a room for more than ten minutes would be "outrageous" and "inhumane." *Id.* Ms. Hall admitted that there would be no educational reason to keep a child in such a room for more than 15 minutes. Dkt. 43-4 at 58:12-15. The testimony establishes that Plaintiffs were placed in the seclusion room for the "rest of the day" by Defendants. Dkt. 43-6 at 8:16-22. Taking Plaintiffs statements as true, which the court must at summary judgment, there can be little doubt that a factfinder could conclude the conduct of Hall and Williams was unreasonable, and thus an unreasonable seizure occurred.

As to Ms. Williams' conduct of dragging E.C. down the hall, a factfinder could certainly find such conduct unreasonable. Ms. Williams was disciplined because the Virginia Beach

11

School system and Ms. Hall both considered her conduct unreasonable and forbid her from ever acting in that way again. If Ms. Hall, a co-defendant and Ms. Williams' supervisor, finds the conduct to be unreasonable, a factfinder is entitled to make that same determination. Defendants' citation to an Fifth Circuit case, *Campbell v. McAlister*, which is both unpublished and appears never to have been cited or relied on outside of the Fifth Circuit, does not allow the Court to substitute its view of unreasonableness with that of Ms. Hall and the School Board. The factfinder will determine if the actions of Ms. Williams were reasonable or whether she committed an unreasonable seizure.

> B. <u>Removing E.C. and Q.C. from the classroom for extended amounts of time without ever informing their parent of these actions or their behavior violates E.C. and Q.C.'s due process rights.</u>

Taking the evidence in the light most favorable to E.C. and Q.C., they were removed from their classroom setting and placed in seclusion for crying at school. Dkt. 43-6 at 8:16-22. Such "multiple instances of in-school isolation" can constitute the functional equivalent of total exclusion from the educational process. *See Brattain v. Stanly Cty. Bd. of Educ.*, No. 1:19cv1037, 2020 U.S. Dist. LEXIS 201123, at *13-14 (M.D.N.C. Oct. 28, 2020). Where placement in the seclusion room was "everyday" and "for the rest of the day" as the testimony supports, this is simply not the "routine school discipline matters" on which Defendants base their argument. Defendants seek to rely upon *Wofford v. Evans*, 390 F.3d 318 (4th Cir. 2004) to argue "there is no constitutional obligation for the parents of a child to be notified <u>before</u> the student is placed in time-out for disciplinary reasons." *See* Dkt. 43 at 15 (emphasis added). But Defendants' argument misses the nature of the due process claim.

The problem was not that Hall and Williams failed to contact Ms. Holloway <u>before</u> the use of the seclusion room, it is that they continued an extensive pattern of using the seclusion

12

room day after day after day to isolate Q.C. and E.C. from their educational opportunities without ever informing Q.C. and E.C.'s mother. Plaintiffs were never offered a genuine opportunity to understand the use of the seclusion room or object to its continued use. This was despite a rule in place that required them to provide Ms. Holloway that information.

The Supreme Court has acknowledged when the school seeks to exclude a student from his educational opportunities, he must "be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. The [Due Process] Clause requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school." *Goss v. Lopez*, 419 U.S. 565, 581, 95 S. Ct. 729, 740 (1975). For two minor children with limitations and disabilities, that due process can only occur if their guardian is informed of the frequent isolation of the children. Defendants attempt to argue that *Smith v. City of Charleston*, No. 2:06-CV-00825-DCN, 2007 U.S. Dist. LEXIS 114475, at *9 (D.S.C. July 24, 2007) and *Wofford* do not require parental notification of school seizures. Both *Wofford* and *Smith* involve one-time seizures to investigate crimes on school grounds. Neither addresses the habitual discipline and deprivation of educational opportunities here.

E.C. and Q.C. were repeatedly isolated for their behavior and placed in a seclusion room by themselves for extended periods of time without access to their peers, educational materials, or instruction. Hall and Williams hid this fact from Ms. Holloway, ensuring E.C. and Q.C. did not receive even rudimentary due process where the nature of the supposed "misconduct" could be considered or this abusive technique could be evaluated. That lack of notice and an opportunity to be heard violated basic principles of due process and a factfinder could conclude it violated E.C. and Q.C.'s constitutional rights.

13

### C. The School Board's decision not to have any policy or training regarding the use of seclusion rooms violated E.C. and Q.C.'s constitutional rights.

The School Board admits that the failure to have a policy or train its staff can violate Plaintiffs' constitutional rights so long as it constitutes subjective deliberative inference. Dkt. 43 at 17. And this Court has explained that "a failure to train claim also can be based on a municipality's failure to train its employees concerning an obvious constitutional duty that the particular employees are certain to face." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 704 (E.D. Va. 2004). That is this exact situation.

For years, the Department of Education had been warning that the seclusion of children was a dangerous practice that required careful policies to protect our most vulnerable students. See Plaintiffs' Fact No. 31-32. And the Virginia Beach School Board knew that these rooms existed and were being used by its faculty and staff. See Plaintiffs' Fact No. 30. And yet faced with the obvious fact that the use of these rooms constituted a seizure and that student constitutional rights would be violated unless the rooms were used reasonably, the school district did nothing. The School District had no policy and no training that it provided to the staff who were using the rooms. Plaintiffs' Fact No. 29. The failure to act when faced with a known danger is the very epitome of deliberate indifference. A reasonable factfinder could conclude that the School District has §1983 liability for its failure to act, train, or establish policies.

Defendants want to argue that the School District's decision to wait until regulations were issued by the Commonwealth of Virginia was "reasonable." Dkt. 43 at 18. Determining reasonableness is a quintessential issue left to the factfinder. Here, the factfinder could conclude that continuing to allow its staff to seclude students, without any guidance or training for five years while the Commonwealth crafted its own regulations, is anything but reasonable. *See* Undisputed Fact No. 50, 54. At any time, the School District could have prohibited the use of

14

the seclusion rooms until it had finalized policies. *See* Plaintiffs Fact No. 33. There is no basis to conclude the conduct of the School District was reasonable as a matter of law. It is an issue for the factfinder to determine.

2. <u>A factfinder could conclude that Hall's and Williams' placement of E.C. and Q.C. in the seclusion room for extended periods of time constitutes intentional inflection of emotional distress.</u>

Defendants' arguments regarding intentional inflection of emotion distress ("IIED") can be rejected because they refuse to apply the correct summary judgment standard. They assert that Hall took no action towards Q.C. Dkt. 43 at 19. But evidence establishes Q.C. was placed in the seclusion room for significant periods of time and Hall always made the decisions about how the seclusion rooms were used. Plaintiffs' Fact No. 12, 34. And their claims that the seclusion of E.C. was simply for his safety and to de-escalate the situation is contracted by the evidence that he was isolated for significant periods of time. Both Ms. Hall and Ms. Williams admit there would be no educational reason to keep him in the room for more than 15 minutes. Plaintiffs' Fact No. 24 and 25. Ms. Williams even admits that if the testimony of E.C. and Q.C. is true, the seclusion would be cruel and inhumane. Plaintiffs Fact No. 24. That is the exact type of conduct—the abuse of children through their isolation with no legitimate educational purpose—that meets the standards of IIED. It is conduct so "outrageous in character and so extreme in degree, as to go beyond all bounds of decency." *Doe v. Baker*, 299 Va. 628, 654-655 (2001).

Defendants also misread *Womack v. Eldridge*, 215 Va. 338, 342 (1974) and *Minga v. Phoenix-N-Peace Adult Care Residence*, 85 Va. Cir. 219, 221 (Sussex County Cir. Ct. Aug. 13, 2012). Defendants claim they stand for the proposition that a physical injury is necessary for an IIED claim. The cases stand for the opposite proposition. "If negligence is so egregious it

15

satisfies the elements of an intentional infliction of emotional distress claim, no physical injury is necessary." *Minga*, 85 Va. Cir. at 221.

Defendants admit there would be no reason, other than cruelty, to keep children in a seclusion room for more than 10 to 15 minutes. Yet that is exactly what E.C. and Q.C. have testified occurred. Taking the evidence in the light most favorable to Plaintiffs, a factfinder could find for Plaintiffs on the IIED claim.

   3. <u>A factfinder could conclude that Hall's and Williams' placement of E.C. and Q.C. in the seclusion room for extended periods of time constitutes wrongful imprisonment</u>.

Under Virginia law, "[f]alse imprisonment is restraint of one's liberty without any sufficient legal excuse therefor by word or acts which he fears to disregard, and neither malice, ill will, nor the slightest wrongful intention is necessary to constitute the offense." *Montgomery Ward & Co. v. Wickline*, 188 Va. 485, 489, 50 S.E.2d 387, 388 (1948).

Here again, Defendants argue only based upon their view of the evidence, and not taking the evidence in the light most favorable to Plaintiffs. Defendants claim that they only briefly placed E.C. in a "supervised time-out" and thus it was not wrongful imprisonment. But taking the evidence in the light most favorable to Plaintiffs, E.C. and Q.C. were both placed into a room and kept from leaving for extended periods of time for no educational reason. There is no "adequate legal justification" for such actions. And Defendants' attempt to rely upon Va. Code §22.1-279.1, which allows "reasonable" actions cannot provide a defense where even Defendants admit that if Q.C. and E.C.'s version of events is true, their actions would be unreasonable. *See* Plaintiffs' Fact No. 24 and 25. It is for the factfinder to decide what actually happened to Q.C. and E.C. and the validity of this claim. It cannot be decided by the Court at summary judgment. Defendants do not even attempt to argue that their conduct, if the evidence is construed in favor of Plaintiffs, would not support a claim for false imprisonment.

16

4. <u>A factfinder could conclude that Williams' conduct of dragging E.C. was an assault.</u>

Again, Defendants fail to take the evidence in the light most favorable to E.C. There is a dispute of material facts as to what actually occurred before Ms. Williams chose to drag E.C. across the floor. A reasonable factfinder could conclude from the videotape showing E.C.'s actual behavior that the claims of "total destruction" "screaming" and "growling" is completely inconsistent with the docile, calm, and playful E.C. depicted in the video and thus reject Ms. Williams' version as uncredible. Further, since no written documentation was provided contemporaneously to Ms. Holloway with regard to Ms. Williams's actions, which would have been required if E.C. was actually a threat to himself or others, a factfinder could conclude the story Ms. Williams now tells is a fabrication. And a factfinder could conclude that Ms. Williams' conduct was not reasonable since Ms. Hall and the Virginia Beach School District disciplined Ms. Williams for her conduct and indicated her actions were not reasonable and should not be repeated. *See* Exhibit 3.

As with the other claims, it is for a jury to decide what actually occurred and whether E.C. is entitled to recover for the actions of Defendants.

## CONCLUSION

WHEREFORE, Plaintiff respectfully asks that this Court deny all the relief requested in Defendants' Motion for Summary and such other and further relief as the justice of the cause requires.

Dated: May 27, 2022

                                  LATASHA HOLLOWAY,
                                  in her Capacity as the Mother and
                                  Next Friend of E.C. and Q.C., Minors

                                By: */s/. Dustin M. Paul*
                                        Of Counsel

Dustin M. Paul (VSB #75287)
Gaela R. Normile (VSB #95912)
Daniel L. Stephens (VSB #95012)
Vandeventer Black LLP
101 W. Main Street, Ste. 500
500 World Trade Center
Norfolk, VA 23510
757.446.8600-telephone
757.446.8670-fascimile
dpaul@vanblacklaw.com
gnormile@vanblacklaw.com
dstephens@vanblacklaw.com